UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHEILA DAVID, | ) |
| Petitioner, | ) ) ) |
| vs. | ) ) Case No. 4:14-cv-1640-JAR |
| ANGELA MESMER, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Sheila David's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Government has responded (Doc. 4), and Petitioner has filed a reply (Doc. 7). On September 26, 2017, the Court entered an order staying this matter pending final disposition by the Missouri Supreme Court of Petitioner's state habeas corpus claim. That petition was denied, and, on December 5, 2017, the Court lifted the stay.

After review of the briefing submitted in this matter and for the following reasons, Petitioner's § 2254 petition is **DENIED** and this action is **DISMISSED with prejudice**.

### I. Introduction and Background

#### a. Plea hearing

Petitioner was charged by indictment with stealing over $25,000. (Resp. Ex. B at 55). Petitioner entered into a blind plea and pleaded guilty to felony stealing as a prior and persistent offender on February 7, 2012. (*Id.* at 12). Before the plea hearing started, the judge and plea counsel held a discussion off the record. (Resp. Ex. A at 24).

The State asserted that, at trial, the State would establish that Petitioner appropriated cash of a value of at least $25,000 during her employment as a bookkeeper for Gateway Cleaning &

Restoration without the consent of her employer. (*Id.* at 13-14). Specifically, the State indicated it would establish that Petitioner stole the money by using her position to write herself checks on the company's account, totaling $45,027. (*Id.*). Petitioner admitted those facts were substantially true and correct. (*Id.* at 14).

The State indicated that Petitioner's stealing offense would be enhanced from a class B felony to a class A felony, as Petitioner admitted she had two prior convictions. (*Id.*). The state court[1] determined that Petitioner was a prior and persistent offender, and the range of punishment for such an offense was 5 to 30 years or life imprisonment. (*Id.*) The state court asked whether Petitioner understood the range of punishment she would face if she were to go to trial, which she answered in the affirmative. (*Id.*). Petitioner then entered her blind plea and requested that the state court consider probation. (*Id.*). In response to questioning, Petitioner indicated that she was not under the influence of any medication or drugs, that she understood the charges against her, that her attorney explained the charges against her, and that she understood that she did not have to plead guilty. (*Id.* at 12-13). The state court's exchange with Petitioner went as follows:

> Q. Has anyone promised you anything about your sentence, other than what the State has recommended, to get you to plead guilty?
> A. No, Your Honor.
> ...
> Q. (By the Court) You want me to consider probation?
> A. Yes, please, Your Honor.
> Q. Has anybody promised you I will give you probation?
> A. No, Your Honor.
> Q. Do you understand you cannot take back your guilty plea because you do not like the sentence that I give you?
> A. Yes, Your Honor.

---

[1] The same judge presided over Petitioner's plea hearing, sentencing, and post-conviction evidentiary hearing.

2

(*Id.* at 15). In response to further questioning, Petitioner stated that she had no complaints with her attorney, that nobody threatened, intimidated, or mistreated her or had in any way forced her to plead guilty, and that she was entering her plea by her own free will. (*Id.* at 15).

The state court found that Petitioner's guilty plea was made knowingly, voluntarily, and intelligently, with a full understanding of the consequences. (*Id.*). The state court then engaged in the following colloquy with Petitioner:

> The Court: …Now [Petitioner], so you and I are on the same page, I spoke with your attorney, you perhaps heard me.
> [Petitioner]: I heard some of it.
> The Court: I'm particularly not quiet in my expressions. But I will put you on probation largely for only one reason, and that's to get restitution.
> [Petitioner]: Yes, Your Honor.
> The Court: So if you don't pay the restitution, whatever that number is, [] you will go away.

(*Id.* at 15-16). After the plea hearing and before the sentencing, Petitioner met with a probation officer, who then prepared a sentencing assessment report.

### b. Sentencing

On April 20, 2012, Petitioner appeared for sentencing. One of the victims of Petitioner's theft, a World War II veteran, testified that as a result of Petitioner's actions, he had to file for bankruptcy because the company was in the victim's name. (*Id.* at 17). The victim's wife also testified, stating that Petitioner's actions affected the victim's health "in a horrendous way." (*Id.*). Plea counsel then argued for a sentence of probation, stating that Petitioner would be able to pay $300-$400 per month in restitution, and the following exchange occurred:

> The Court: What has she done so far to make restitution?
> [Counsel]: I'm not sure, Judge. If you'd like to ask [Petitioner] that I'm sure she'll let you know.
> [Petitioner]: I haven't been able to do anything until I start a new job next weekend. - - I mean next week.
> The Court: So the answer is you've done nothing?
> [Petitioner]: Well, I haven't had a car –

3

>     The Court: In other words, you've done nothing?
>     [Petitioner]: I went through a bad divorce. I pretty much lost everything in my divorce, both of us have. I've lost a home because of him, vehicles.
>     The Court: [Petitioner]--
>     [Movant]: I have nothing.

(*Id.* at 18). The state court then stated:

>     The Court: --my view is that you are a predator, and you need to be locked up for a long, long time. I want these two people to live the rest of their life out knowing you are still in jail. Will that give them their business back? No. I'm sick, beyond sick, and my staff knows because I've talked to them about it for two weeks. I'm outraged, I'm--I can't even articulate how I feel.
>     Twenty people lost their jobs because of you. You falsified the police report, your prior record. They tried to do due diligence and you lied to them about that. You took $45,000 from them. Their business went in the tank, they're going to lose their house, they've gone bankrupt, they're sick.
>     And you've done nothing, nothing since February. Not one thing. I say February, I mean I don't even know when this crime was committed. You've done nothing in the whole period of time. And the lady who wrote the SAR said the following: "Little remorse was detected."

(*Id.*). The state court then sentenced Petitioner to 20 years' imprisonment:

>     The Court: ... this is as egregious a crime as I've ever seen. And I can't do it, I cannot follow the guidelines. I'm having difficulty doing only 20. My staff thinks it should be 45, one year for every dollar you stole, every thousand dollars.
>     ...
>     Considering the argument of counsel for the defendant, the statements made to the Court by the victims, the recommendations of and the information in the Sentencing Assessment Report, it is the judgment and sentence of the Court that [Petitioner] shall be sentenced to imprisonment in the Missouri Department of Corrections for a term of 20 years...

(*Id.* at 18-19). The state court then explained Petitioner's right to a Missouri Supreme Court Rule 24.035 motion for post-conviction relief and again asked whether Petitioner had any complaints regarding her attorney, to which Petitioner answered in the negative. (*Id.* at 21).

On June 25, 2012, Petitioner filed her pro se Rule 24.035 motion to set aside her sentence. On March 15, 2013, appointed counsel filed an amended post-conviction motion requesting an evidentiary hearing and alleging:

4

1. Petitioner's plea was unknowingly and involuntarily made because it was induced by the promise of a certain sentence, in that the court told her that she would be put on probation so she could pay restitution. Instead, the court sentenced her to 20 years' imprisonment. Had she known the court would sentence her to 20 years' imprisonment, she would not have pled guilty.

2. Petitioner was denied her rights to effective assistance of counsel because plea counsel failed to adequately present mitigating evidence to the court. Had plea counsel provided the Court with information about Petitioner's ability and willingness to pay restitution, Petitioner would have received a lesser sentence.

On May 13, 2013, the state court held an evidentiary hearing on Petitioner's claims, and Petitioner and plea counsel testified. (Resp. Ex. A). Petitioner testified that before her plea hearing commenced, plea counsel spoke with the judge. (*Id.* at 7). She testified that she heard a portion of the conversation held between plea counsel and the judge, which made her believe that she was going to get probation. (*Id.* at 8-9). Specifically, Petitioner stated:

> Q. Okay. Could you hear some of that conversation?
> A. Yes, ma'am.
> Q. Okay. And whose voice could you hear?
> A. The judge's.
> Q. Could you hear [plea counsel] talking as well?
> A. No.
> Q. And why do you think, why was that?
> A. I think the judge wanted me to hear what he was saying.
> Q. Okay. And that happened before you came up to plead guilty?
> A. Yes, ma'am.
> ...
> Q. Okay. And I'm not going to ask you to repeat what you heard.
> A. Yes, ma'am.
> Q. But how did you feel about what you heard the judge say?
> A. I felt that I was going to get probation.

(*Id.* at 7-9). Petitioner also testified that she brought $1,000 with her to the plea hearing and advised her attorney accordingly. (*Id.* at 7). Petitioner advised her attorney of a related civil judgment that was entered against her and in favor of the victims in the amount of $60,000, which Petitioner believed would help her get probation. (*Id.* at 12). Petitioner further testified that at the time of her plea, she "had a job lined up." (*Id.* at 10). When asked whether she told

5

the judge about the money or judgment at the plea hearing, she admitted that she did not because she thought plea counsel had advised the judge of these considerations before the hearing and believed that Petitioner "didn't think [she] should say anything" because Petitioner had an attorney to represent her. (*Id.* at 12). Petitioner further testified that she did not bring the $1,000 to the sentencing. When asked whether she told the judge about the money or civil judgment at the sentencing, she testified that she had not "because I looked at [plea counsel] and said are you going to say something, and she said the judge already made his decision." (*Id.*).

Plea counsel testified to the following. She met with Petitioner on two occasions to discuss Petitioner's case. (*Id.* at 20). In light of an agreement Petitioner signed in the civil case, Petitioner believed, and plea counsel agreed, that pleading guilty and advocating for probation and restitution was the best course. (*Id.*). Plea counsel advised Petitioner to have verifiable employment or evidence of her ability and willingness to pay restitution at the sentencing. (*Id.* at 21).

Plea counsel admitted that she was aware that Petitioner brought $1,000 with her to the plea hearing, but told Petitioner that Petitioner needed to pay that amount to probation and parole because that office, not the court, collects restitution and would note such a deposit in its sentencing assessment report. (*Id.* at 21-22). Plea counsel testified that at the sentencing, she did not advise the state court that Petitioner had brought $1,000 to the plea hearing or that Petitioner had a $60,000 judgment entered against her in the related civil case because she did not believe either was helpful to Petitioner's case. (*Id.* at 23). Specifically, the judgment alone was not useful in the absence of payments toward it, which Petitioner had not done. (*Id.*). Instead, she wanted Petitioner to be able to tell the judge at sentencing that she had a prospective job. (*Id.*)

6

At the time of sentencing, Petitioner claimed she had secured a job, and Petitioner advised the judge accordingly. (*Id.*).

When asked about her conversation with the judge prior to the commencement of the plea hearing, plea counsel testified as follows:

> Q . . . Do you recall the conversation that occurred off the record before the plea?
> A. I know that I came up and was talking to [the judge] trying to -- trying to, you know, argue for probation up at the bench before we got on the record. But I don't remember anything that he specifically said except, you know, that he wanted to hear from the [victims], and that that was a lot of money to have to pay back.
> Q. Okay. And at that point do you recall the judge promising probation?
> A. No.
> Q. Who made the ultimate decision to plead guilty?
> A. Petitioner.

(*Id.* at 24-25). With regard to any promises made to Petitioner regarding probation, plea counsel testified:

> Q. Did you ever promise [Petitioner] that she would get probation?
> A. No.
> Q. Do you recall the judge ever promising her that she would get probation?
> A. No. I know that he did mention that, you know, that he would consider it, but the only way that he would give it to her would be if she would be able to repay or if she -- not even would be able but that she would have to repay the money to the victims, yeah.

(*Id.* at 24).

On June 17, 2013, the motion court denied Petitioner's motion for post-conviction relief. (Resp. Ex. B at 55). It held that Petitioner's claim that she pled guilty based on representations made by the state court that she would be placed on probation was meritless because Petitioner stated at the plea hearing that no promises had been made to induce her plea, and Petitioner's assertion that she was promised probation was contradicted by the record. The motion court also found that plea counsel was not ineffective for failing to present the alleged mitigating evidence

7

because the state court was aware of the civil judgment from the sentencing assessment report, Petitioner made no effort to pay restitution between the plea and sentencing, and there was nothing plea counsel could have done that would have changed the sentence Petitioner received. (*Id.* at 61-62).

The state court of appeals summarily affirmed the denial. *See David v. State*, 433 S.W.3d 492, 493 (Mo. Ct. App. 2014). Specifically, it held that the record reflected that no positive representation regarding probation was made to her by the state court and, even if it could be said that there was a positive representation made, Petitioner's reliance upon it would be unreasonable due to the court's extensive questioning of her during the actual plea. (Resp. Ex. E at 7). The court of appeals also held that Petitioner failed to show how plea counsel's alleged failure to present mitigating evidence constituted deficient performance or that Petitioner was prejudiced under the circumstances of the case. (*Id.* at 8). Specifically, the court of appeals found that Petitioner did not pay any money to the victims, a fact that Petitioner confirmed at the sentencing hearing. (*Id.* at 9). Therefore, plea counsel's failure to inform the state court that Petitioner brought $1,000 to the plea hearing and that a judgment had been entered against her in the civil matter was neither deficient nor prejudicial in light of Petitioner's actions. (*Id.*).

Petitioner then filed her pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), in which she set forth three grounds for relief as follows:

1. Petitioner's plea was involuntarily and unknowingly entered because it was induced by a promise made by the court that she would receive probation so that she could pay restitution.

2. Plea counsel was ineffective in that she failed to present mitigating evidence. Had plea counsel done so, Petitioner would have received a lesser sentence.

3. Petitioner was denied her right to due process because plea counsel failed to present mitigating evidence to the court.

8

The Respondent argues in its response that regardless of any discussions about what the state court was likely to do at sentencing, Petitioner was aware of the range of punishment and that there was no guarantee that she would get probation. (Doc. 4 at 3). It further argues that plea counsel was not ineffective for failing to inform the state court about the civil judgment in favor of the victims or the fact that Petitioner brought money with her to the plea hearing because Petitioner ultimately failed to may any restitution payments between the plea hearing and the sentencing, and the state court was aware of the civil judgment. (*Id.* at 4).

In her reply, Petitioner focuses on the importance of the alleged conversation held between the state court and counsel prior to Petitioner's plea hearing. (Doc. 7). Specifically, she claims that the state court misled plea counsel, arguing that "[i]f not for the conversation between Petitioner's counsel and the trial judge, counsel would not have recommended Petitioner to take an open plea, and would have recommended Petitioner to take the plea bargain the State was offering, which clearly indicates that counsel's conversation with the trial judge made a huge impact on the advice counsel gave to Petitioner." (*Id.* at 3). For the following reasons, the Court will deny the petition.

## II. Analysis

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

9

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "'A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result.'" *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)).

A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)). A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

### A. Involuntary and Unknowing Plea (Ground one)

"A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment),

10

misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755 (1970). The fundamental test is whether the plea of guilty was an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Watkins v. Solem*, 571 F.2d 435, 437 (8th Cir. 1978) (citing *McMann v. Richardson*, 397 U.S. 759, 766 (1970)).

Petitioner contends that her plea was involuntary because it was induced by the state court's promise of giving Petitioner probation. However, the record shows that the state court made no promises to Petitioner regarding probation. Instead, the state court explained the range of punishment to Petitioner and confirmed that no one had promised her anything with regard to her sentence. (*Id.* at 14). Before pleading guilty, Petitioner asked the state court to consider probation, and the state court confirmed that no one had promised her that she would be put on probation. (*Id.* at 15).

The state court then went on to explain to Petitioner that it "would put [Petitioner] on probation largely for only one reason, and that's to get restitution." (Resp. Ex. B at 16). While the choice of words is unfortunate, Petitioner's claim that she relied on these representations made by the state court when she pled guilty is not credible. (Doc. 1 at 7A). The record clearly shows that the conversation upon which Petitioner relies occurred *after* she pled guilty. Furthermore, the state court warned Petitioner that if she did not pay restitution, her sentence would be, at best, "a year for every thousand [dollars]". (Resp. Ex. B at 16). Based on this record, the Court finds that the motion and appellate courts reasonably held that the state court did not make any false representations or induce Petitioner to plead guilty.

11

Moreover, a petitioner's representations during her guilty plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977). The transcript of the plea hearing reflects a number of representations that Petitioner made to the state court, including admitting to the State's description of her theft, her understanding of the range of punishment, her statement that no one had promised her a sentence of probation or any other sentence, and her statement that she understood her right not to enter into a guilty plea. (Resp. Ex. B at 13-15). The motion and appellate court reasonably relied on Petitioner's representations at the plea hearing in its determination that the state court did not promise Petitioner anything with regard to probation.

## B. Ineffective Assistance of Counsel (Grounds two and three)

To state a claim of ineffective assistance of trial counsel, Petitioner must demonstrate both that her counsel's performance was deficient and that she was prejudiced by that performance. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Id.* To establish prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (internal quotations and citations omitted). There is a strong presumption that counsel's "challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 687 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101

(1955)).

In cases where a petitioner has entered a guilty plea, *Strickland's* prejudice requirement focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997).

Applying the *Strickland* framework, the Court agrees with the state courts' conclusion that plea counsel's decision not to inform the state court at sentencing that Petitioner had $1,000 with her at the plea hearing, that Petitioner had a judgment against her in the companion civil matter, or that she had secured a job that was to start soon was not objectively unreasonable. At the post-conviction evidentiary hearing, plea counsel testified that she told Petitioner to have verifiable employment at the sentencing, which would show both a willingness and ability to pay. (Resp. Ex. A at 21). Petitioner testified that she had secured a job, but it does not appear from the record that she brought evidence or any verification of such employment with her to the sentencing.

Plea counsel also testified that she instructed Petitioner to pay the $1,000 to the office of probation and parole and report that activity to the court at sentencing. (*Id.* at 21-22). Again, Petitioner failed to do so. Plea counsel's justification for not informing the state court that Petitioner brought the money with her was that Petitioner had not paid anything between the plea hearing and sentencing, which would be considered an unwillingness or inability to pay by the state court. (*Id.* at 22).

Establishing ineffective assistance of counsel is a "heavy burden," *United States v. Apfel*,

13

97 F.3d 1074, 1076 (8th Cir. 1996), because "[i]n determining whether counsel's conduct was objectively reasonable, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997) (citing *Strickland*, 466 U.S. at 689) (internal quotations omitted). Here, the state courts' conclusion that plea counsel's conduct was within the standard set forth under *Strickland* was reasonable.

Furthermore, the Court finds that the state court of appeals reasonably held that Petitioner could not establish that she was prejudiced by any allegedly deficient performance on the part of plea counsel. First, the state court was already aware of the civil judgment by way of the sentencing assessment report. (Resp. Ex. B at 62). Additionally, the court noted that it asked Petitioner what she had done to make restitution, and Petitioner herself stated that she had not been able to do anything. (*Id.*). Petitioner did not at any time tell the state court that she brought $1,000 to the plea hearing, and Petitioner made no effort to pay any money to the victims between pleading guilty and the sentencing. (*Id.*). Petitioner's failure to do so carried significant weight with the state court and, as a result of Petitioner's actions, the state court held that there was "nothing [Petitioner's] attorney could have done that would have changed the sentence [Petitioner] received." (*Id.*).

In reviewing the motion court's findings of fact and conclusions of law, the state court of appeals noted that although Petitioner brought money to the plea hearing, plea counsel instructed Petitioner to give the money to the office of probation and parole. (Resp. Ex. E at 9). Petitioner did not do so, nor did she explain her ability or willingness to pay anything at the sentencing. As a result, the state court of appeals found that Petitioner could not establish that she was prejudiced by any allegedly deficient performance by plea counsel.

14

In holding that Petitioner's claims of ineffective assistance of plea counsel did not merit post-conviction relief, the state courts identified and applied reasonably the *Strickland* standard. Petitioner failed to establish that it was unreasonable for the state courts to find that she was not prejudiced by plea counsel's failure to introduce mitigating evidence during the sentencing hearing, particularly where the court knew about the civil judgment and where Petitioner had an opportunity to inform the court about her ability to pay. Ultimately, Petitioner's actions between the plea and sentencing constituted strong evidence of her unwillingness or inability to pay restitution.

Because the state courts' determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § 2254(d)(1) and (2), Petitioner's habeas petition will be denied.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Sheila David's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this action is **DISMISSED**.

A judgment dismissing this case is filed herewith.

Dated this 19th day of March, 2018.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

15